UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| Jeffrey Ellerton, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>Lorie Ellerton, as Tutor for )<br>Erika Benhamron, and Erika )<br>Benhamron, Individually, )<br>)<br>Defendants. ) | Case No. 5:09-cv-71 |

**OPINION AND ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION TO STRIKE EXPERT WITNESSES**
(Doc. 72)

This matter came before the court on the Motion to Strike filed by Defendants, Lorie Ellerton, as Tutor for Erika Benhamron, and Erika Benhamron, individually. Defendants ask the court to strike the testimony at trial of two witnesses Plaintiff, Jeffrey Ellerton, intends to call on the grounds that Plaintiff has substantially failed to comply with the applicable discovery rules. Plaintiff opposes the motion.

Plaintiff is represented by Joel T. Faxon, Esq., Eric P. Smith, Esq., and Joseph C. Galanes, Esq. Defendants are represented by Sonya L. Sibold, Esq. and Stephen J. Soule, Esq.

### I. Factual and Procedural Background.

On March 18, 2009, Plaintiff brought this action against Defendants for injuries allegedly sustained in a jet ski accident on Lake Champlain in August, 2007. Plaintiff filed his Second Amended Complaint on July 26, 2010. The parties have stipulated three times to extend the discovery schedule. The final discovery order required Plaintiff to submit expert witness reports by February 15, 2010 and Defendants to submit expert

witness reports by June 1, 2010. All discovery was to be completed by July 1, 2010, and the case was to be ready for trial by July 30, 2010.

On June 10, 2010, Defendants filed a motion to strike Plaintiff's expert witnesses, Dr. David Smith, a watercraft safety and accident expert, and Dr. Robert Bray, a Canadian orthopedic doctor and one of Plaintiff's treating physicians. Defendants argue that Plaintiff did not comply with his discovery obligations under Fed. R. Civ. P. 26(a)(2)(B) because he did not provide a list of all cases in which Dr. Smith had testified in the last four years. Defendants also contend that although Plaintiff timely disclosed Dr. Bray as a treating physician, Plaintiff intends to call Dr. Bray as an expert witness for whom no expert report was served. Plaintiff responds that he provided a written list of Dr. Smith's pending cases, and that a Rule 26 report is not required for a treating physician. He further contends that striking these experts would be an excessive sanction.

Rule 26(a)(2)(A) requires that the identity of expert witnesses be disclosed. The Rule further mandates that such disclosure:

> must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the data or other information considered by the witness in forming them;
>
> * * *
>
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i), (ii), (v), (vi).

2

Fed. R. Civ. P. 37 sets forth various sanctions that courts may impose in response to a party's failure to comply with its discovery obligations under Rule 26. Rule 37(c) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)  may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B)  may inform the jury of the party's failure; and
>
> (C)  may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi) [ranging from striking pleadings in whole or in part to dismissing the action].

Fed. R. Civ. P. 37(c)(1) (emphasis supplied). The proper implementation of Rule 37(c) has been described as follows:

> Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance. *Pierce v. Underwood*, 487 U.S. 552, 108 S.[]Ct. 2541, 101 L.[]Ed.[]2d 490 (1988). Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure. The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure.

*Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995).

## II.  Motion to Strike Dr. Smith.

Defendants move to strike Dr. Smith's testimony because of Plaintiff's alleged non-compliance with Rule 26(a)(2)(B)(v). In response to Defendants' discovery requests, Plaintiff initially provided Defendants a list of only five cases in which Dr. Smith had testified over the past four years. Defendants then learned at Dr. Smith's March 2010 deposition that he currently has twenty-five to thirty active cases, and earned approximately $180,000 in 2008 and $150,000 in 2009 from expert witness work. Also

3

at the deposition, Defendants received a list from Dr. Smith (that he had brought with him) of approximately thirty-four of his active cases. In addition, Dr. Smith testified that he kept a "master list" of all the cases he had worked on since 1993 on his computer. Finally, through their own research, Defendants discovered that Dr. Smith testified in a deposition in another case that he has been deposed approximately 250 times, had forty-five active cases, and on average, opened two new cases a month.

Asked why Plaintiff had produced a list of only five cases, Dr. Smith stated that he had sent Plaintiff's attorney a list of all of the personal watercraft cases he had worked on, and the attorney extracted four cases that Dr. Smith had worked on within the last four years to provide to Defendants.

Following the deposition, Defendants' attorney requested that Plaintiff provide a complete list of cases in which Dr. Smith had testified in the last four years. Defendants made multiple requests for this information, and finally, on April 30, 2010, Plaintiff produced a list of four additional cases. However, it was not until Defendants filed the instant motion to strike that Plaintiff produced a complete list. That list contains numerous informational gaps (cases where no date was given for Dr. Smith's testimony, or no express indication whether he actually testified), and indicates that Dr. Smith testified between twenty-three and fifty-one times in the last four years.

"The obvious purpose of providing lists of prior cases is to enable opposing counsel to obtain prior testimony of the expert." *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y. 1999). "While the Rule does not specify what should be in the 'listing of other cases,' the cases have emphasized that the key is whether sufficient information is provided so that the opposing party's counsel can procure copies of the deposition or trial testimony." *Norris v. Murphy*, 2003 WL 21488640, *1 (D. Mass. June 26, 2003) (citations omitted). The identifying information that should be disclosed on the list includes: "the courts or administrative agencies, the names of the parties, the case number, and whether the testimony was by deposition or at trial. Such information

4

should be sufficient to allow a party to review the proceedings to determine whether relevant testimony was given." *Nguyen*, 162 F.R.D. at 682.

Whether a party should be sanctioned for failure to comply with Rule 26(a) involves an analysis of whether the failure to disclose is "substantially justified" or "harmless," pursuant to Rule 37(c). Plaintiff does not explain why he failed to provide the information required by Rule 37(c) from the outset, or when repeatedly requested thereafter. He simply argues that since he has now provided the information, striking Dr. Smith would be "an improperly excessive sanction." (Doc. 78 at 5.) The burden is on Plaintiff to establish that his failure was substantially justified. He has not carried that burden. Accordingly, the court finds that Plaintiff's failure to comply with his discovery obligations with regard to Dr. Smith was not substantially justified.

The court must next address whether Plaintiff's failure to comply was harmless. Again, Plaintiff addresses this issue only tangentially, arguing that he eventually complied with his discovery obligations. This, alone, however, does not render his initial failures "harmless." *See, e.g., Ill. Conf. of Teamsters & Employers Welfare Fund v. Steve Gilbert Trucking*, 129 F.3d 1267, 1997 WL 724519, *4 (Table) (7th Cir. 1997) (commenting that defendant's "late submission of its witness list constituted a failure to comply with the court's discovery order, opening the [defendant] company up to sanctions"); *North Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) ("Belated compliance with discovery orders does not preclude the imposition of sanctions."); *An-Port, Inc. v. MBR Indus., Inc.*, 772 F. Supp. 1301, 1306 (D.P.R. 1991) (imposing sanctions based in part on plaintiff's tardy compliance with discovery order, where plaintiff did not seek an extension and gave no explanation concerning what prompted the delay).

Defendants argue that they have suffered harm because the incomplete disclosure may have concealed cases that were problematic for Dr. Smith. As a result, they "have been deprived of what could amount to a gold mine of resources for which to prepare for cross-examination." (Doc. 72 at 10.)

5

Trial dates for this case have not yet been set; the parties are proposing dates in November of 2010. The case will be determined by a bench trial.

Against this backdrop, Defendants' request to strike Dr. Smith's testimony in its entirety is excessive. Courts have stricken expert witnesses for failure to comply with Rule 26(a)(2)(B)(v) only where a party proffering the expert has provided a seriously deficient list, or no list at all. *See, e.g., Fyfe v. Baker*, 2007 WL 1866882, *1 (D. Vt. June 28, 2007) (granting plaintiff's motion to strike expert for failure to provide listing of cases in which he had testified over the last four years); *Norris*, 2003 WL 21488640, *2-*5 (striking expert witness because the disclosure was both "woefully inadequate" and untimely, where the expert gave case names but no case numbers and no district in which the cases were pending); *Nguyen*, 162 F.R.D. at 680-82 (opining that expert witness disclosure clearly did not comply with Rule 26, and failure to comply was not substantially justified or harmless). Even with these types of discovery infractions, courts have generally offered the non-complying party an opportunity to cure its violations. *See, e.g., Fyfe*, 2007 WL 1866882, *1 (striking expert for party's failure to comply with Rule 26(a)(2) but advising that court would reconsider that decision if party supplied discovery by certain date); *Nguyen*, 162 F.R.D. at 682 (refraining from disqualifying the expert if offending party cured discovery deficiency within forty days); *Norris*, 2003 WL 21488640, *4 (indicating that court may not have stricken the expert if the expert had substantially complied with Rule 26).

Here, the record shows that Defendants ultimately obtained a complete list of cases in which Dr. Smith testified in the past four years. They did so only after they filed their motion to strike. Rule 37(c) permits a court wide discretion in fashioning an "appropriate" sanction for discovery violations. While the court finds that striking Dr. Smith's testimony would be excessive, it concludes that an award of reasonable attorney's fees related to Defendants' efforts to obtain Plaintiff's compliance with Rule 37(c), including those incurred in filing Defendants' motion to strike, is a necessary and appropriate response to Plaintiff's discovery violations. In addition, the court would

6

favorably consider a request from Defendants to re-open Dr. Smith's deposition for the purpose of Defendants' questioning him regarding the complete list of cases in which he has testified. In the event this relief is requested, Plaintiff shall bear the burden of paying Defendants' attorneys fees incurred in taking the deposition, and any fees associated with the presence of its expert witness at the deposition.

### III. Motion to Strike Dr. Bray.

Defendants argue that although Dr. Bray was disclosed as one of Plaintiff's treating physicians, his deposition testimony reveals that his intended role at trial will actually be that of an expert witness offering expert opinions. Defendants point out that, in preparation for Dr. Bray's deposition, Plaintiff's attorney sent Dr. Bray, for his review, a binder of Plaintiff's medical records, reflecting not only Dr. Bray's treatment of Plaintiff in Canada, but also 117 pages of medical records from other providers. Dr. Bray testified at his deposition that his opinion concerning orthopedic care and treatment of Plaintiff's injuries would be based, in part, on those records (which included "treatment provided by other orthopods") (Doc. 79-3 at 6), for the purpose of putting a "structure together, from the time of the incident until now, and what has been done in the interim." (Doc. 79-3 at 9.)

Defendants further object to Dr. Bray's May 2010 examination of Plaintiff on the day before his deposition for which he completed a "Pre-Deposition Assessment" of Plaintiff "for purposes of this litigation." (Doc. 79-3 at 9.) Dr. Bray testified at his deposition that Plaintiff's attorney paid him a total of $4,000 for his work in this case which covered the pre-deposition examination, the record review, and other services. Based upon these undisputed facts, Defendants assert that Dr. Bray was not disclosed as a retained expert witness, but he is being paid as one, and Plaintiff intends to call him to testify in accordance with that status. Since Plaintiff has not complied with Rule 26(a)(2) – by filing an expert report – Defendants conclude that Dr. Bray's testimony should be stricken.

7

Plaintiff counters that he has provided Defendants with "voluminous records" from his treatment with Dr. Bray. He adds that, as a treating physician, Dr. Bray may testify concerning Plaintiff's treatment, prognosis, permanency, and future medical needs. Plaintiff concludes that every opinion that Dr. Bray has articulated was known to Defendants prior to Dr. Bray's deposition.

As previously noted, if a witness is "retained or specially employed to provide expert testimony in the case," the disclosure of that witness must be accompanied by a written report containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B). On its face, Rule 26(a)(2) appears to require expert reports for all expert witnesses. However, the Advisory Committee Notes to Rule 26(a)(2) differentiate between a retained expert and a plaintiff's treating physician:

> The requirement of a written report in paragraph (2)(B) . . . applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of the party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.

Fed. R. Civ. P. 26, Advisory Committee's Notes, 1993 Amendment.

Courts in the Second Circuit generally permit a treating physician to opine regarding causation, prognosis, or permanency if those opinions are based on information gleaned in the course of treatment. *See, e.g., Smolowitz v. Sherwin-Williams Co.*, 2008 WL 4862981, *4 (E.D.N.Y. Nov. 10, 2008) (holding that a treating physician testifying regarding information acquired solely in that role, as opposed to giving an opinion formulated for trial, is not an expert for purposes of Rule 26(a)(2)(A) and may render an expert opinion regarding causation even without submitting a detailed report); *Santoro v. Signature Constr., Inc.*, 2002 WL 31059292, *4 (S.D.N.Y. Sept. 16, 2002) ("As numerous cases in this Circuit and elsewhere recognize, a treating physician often forms an opinion as to the cause of an injury or the extent to which it will persist in the future based upon his examination of a patient. . . . Recognizing this reality, even after *Daubert*,

8

treating physicians have routinely been permitted to testify to determinations that they made in the course of providing treatment regarding the cause of an injury and its severity."); *Finney-Seymour v. United Parcel Serv. of America,* 2001 WL 253044, *1 (D. Vt. Jan. 22, 2001) ("So long as the treating physician does not comment on or review the opinions of other doctors, testimony concerning the cause of an injury specifically treated by the testifying physician does not require compliance with Fed. R. Civ. P. 26(a)(2)."); *Salas v. United States,* 165 F.R.D. 31, 33-34 (W.D.N.Y. 1995) (holding that plaintiff could elicit causation testimony from treating physicians, and such testimony did not bring those physicians "within the strict disclosure requirements of Rule 26(a)(2)(B)."). Accordingly, although treating physicians have wide latitude to opine on causation, prognosis, and diagnosis, these opinions must be derived from information obtained in their course of treatment of the patient:

> As an unretained expert, a treating physician may testify to events and opinions arising directly through her treatment of the patient. "[A] treating physician... may describe what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer her opinions and expert inferences therefrom---all without running afoul of the constraints of Rules 26 and 37 of the Federal Rules of Civil Procedure."

*Kent v. Katz,* 2000 WL 33711516, *2 (D. Vt. Aug. 9, 2000) (quoting *Riddick v. Washington Hosp. Ctr.,* 183 F.R.D. 327, 330 (D.D.C. 1998)). The question thus becomes whether the physician "reached [his] opinions about causation and injury directly through [his] treatment of [the patient] or whether [he] developed those opinions close in time to the litigation of this matter and in connection therewith or at the request of counsel." *Id.* (quoting *Riddick,* 183 F.R.D. at 330-31).

Defendants offer a number of uncontested facts indicating that what began as Dr. Bray's treating physician relationship with the Plaintiff changed significantly over time, and particularly prior to Dr. Bray's deposition. Dr. Bray last saw Plaintiff for treatment in September 2008, and then conducted a pre-deposition examination twenty months later, "for purposes of litigation." Dr. Bray also reviewed additional material from other treating physicians and was paid for that review. He testified that his opinions would be

9

based not only on the care and treatment he provided Plaintiff, but also on the care and treatment provided by others. All of these facts underscore the conclusion that Dr. Bray's opinions venture far afield of those of a treating physician and venture into those of a retained-for-litigation expert witness. If Plaintiff intended to call Dr. Bray as anything more than a treating physician, Plaintiff was required to submit an expert report pursuant to Rule 26(a)(2). *See Thomas v. Consolidated Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996) (when "a treating physician . . . has formulated opinions going beyond what was necessary to provide appropriate care for the injured party, [the treating physician] steps in the shoes of a retained expert for purposes of Rule 26(a)(2)."). Plaintiff has not done so and offers no excuse for his failure.

Defendants propose striking Dr. Bray's testimony in its entirety as an appropriate sanction for Plaintiff's discovery violation. Plaintiff describes this sanction as "excessive" and the court agrees. A discovery sanction should be narrowly tailored to address the magnitude of the violation and the degree of harm or prejudice it has caused. *Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 175 (4th Cir. 1985) (upholding award of sanctions under Rule 37 because they were "tailored narrowly to the extra costs caused by plaintiffs' misconduct in discovery."); *Rivera v. New York City Housing Auth.*, 1998 WL 108032, *1 (S.D.N.Y. Mar. 11, 1998) ("[A]ny [discovery] sanction must be narrowly tailored to remedying the specific prejudice that the party seeking discovery would otherwise suffer."). Here, Plaintiff's violation and any prejudice it caused may be fully redressed by limiting Dr. Bray's testimony to that of a treating physician. Accordingly, any opinions Dr. Bray has developed concerning causation, prognosis, or permanency of Plaintiff's injuries must be based solely upon his treatment of Plaintiff. Dr. Bray will not be permitted to opine regarding his Pre-Deposition Assessment, or regarding the orthopedic care and treatment Plaintiff has received from other physicians. It will be

Plaintiff's burden to demonstrate that Dr. Bray's opinions are derived exclusively from Plaintiff's treatment.[1]

Accordingly, the court GRANTS in part, and DENIES in part, Defendants' motion to strike consistent with the rulings set forth above. Defendants' counsel shall submit an affidavit of reasonable attorney's fees consistent with this Order within fifteen (15) days. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 3rd day of September, 2010.

Christina Reiss
United States District Court Judge

---

[1] Dr. Bray may testify to medical records he received in the course of his treatment of Plaintiff upon which he relied in treating Plaintiff. However, in order to introduce such testimony, Plaintiff must first establish a chain of custody for such records and a date of their receipt sufficient to demonstrate that they were not acquired for purposes of the litigation.