U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 OCT -8  PM 4: 37

BY _____
          DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jeffrey Ellerton,  )
                   )
        Plaintiff, )
                   )
v.                 )   Case No. 5:09-cv-71
                   )
Lorie Ellerton, as Tutor for )
Erika Benhamron, and Erika   )
Benhamron, Individually,     )
                   )
        Defendants. )

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS'
MOTION IN LIMINE**
(Doc. 77)

This motion came before the court on Defendants Lorie Ellerton's and Erika Benhamron's ("Defendants") motion for partial summary judgment and/or motion in limine as to Plaintiff's claim for pain and suffering damages (Doc. 77). Defendants assert that, in accordance with admiralty choice of law principles, Canadian law governs Plaintiff's pain and suffering damages arising out of a jet-ski accident on Lake Champlain. In turn, Defendants contend that the court must apply the Canadian cap on such damages. Defendants move for judgment with regard to that part of Plaintiff's damages claim that may exceed the Canadian cap or, in the alternative, request that Plaintiff be precluded from offering evidence at trial that would permit damages above the Canadian cap. Plaintiff opposes that motion.

Plaintiff is represented by Joel T. Faxon, Esq., Eric P. Smith, Esq., and Joseph C. Galanes, Esq. Defendants are represented by Sonya L. Sibold, Esq. and Stephen J. Soule, Esq.

I. **Undisputed Facts.**

Plaintiff is a Canadian resident domiciled in Calgary, Alberta. Defendants are also Canadian residents domiciled in Quebec. On August 5, 2007, Plaintiff and his fourteen year old niece, Defendant Erika Benhamron, were staying at the Ellerton family property in Pointe au Roche, New York. On separate jet-skis, Plaintiff and Defendant Erika Benhamron travelled across Lake Champlain[1] to go swimming in Vermont waters. Plaintiff's business, a Canadian corporation, owned both jet-skis. After passing through a breakwater near North Hero, Vermont, the jet-ski Erika Benhamron was operating collided with the jet-ski operated by Plaintiff, causing him injuries.

II. **Conclusions of Law and Analysis.**

A. **Standard of Review.**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). Summary judgment is particularly appropriate where, as here, the issue is one of law based on undisputed facts. See *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 224 (2d Cir. 2002).

A motion in limine generally seeks a pre-trial ruling regarding the inclusion or exclusion of evidence based upon its admissibility. As the Second Circuit observed, "[t]he purpose of an in limine motion is to 'aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of the trial.'"

---

[1] The court takes judicial notice that Lake Champlain is bordered by New York, Vermont, and Canada. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known . . . or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). "[I]n the case of a bench trial, a threshold ruling is generally superfluous." *United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). "It would be, in effect, 'coals in Newcastle,' asking the judge to rule in advance on prejudicial evidence so that the judge would not hear the evidence." *Id.* "For logistical and other reasons, pretrial evidentiary motions may be appropriate in some cases. But here, once the case became a bench trial, any need for any advance ruling evaporated." *Id.*

### B. The Law Governing Plaintiff's Pain and Suffering Damages.

It is undisputed that this lawsuit sounds in admiralty, pursuant to 28 U.S.C. § 1333. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) ("Because this case involves a watercraft collision on navigable waters, it falls within admiralty's domain.") (citations omitted). "In admiralty cases, federal maritime law applies where it exists." *See Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) (citations omitted). Here, the parties agree that federal maritime law governs the determination of liability in this case.[2] They dispute, however, whether Canadian law, United States federal maritime law, or Vermont law governs Plaintiff's pain and suffering damages. At issue is whether Canadian law should be applied to impose a cap upon the amount of such damages.

In *Andrews v. Grand & Toy Alberta Ltd.*, [1978] 2 S.C.R. 229 (Can.), the Supreme Court of Canada first imposed a limit on non-pecuniary damages for pain and suffering in tort cases. The *Andrews* court viewed pain and suffering as compensating an injured person for "losses such as loss of amenities, pain and suffering, and loss of expectation of life." *Andrews*, 2 S.C.R. at 262. It opined that "there is a great need in this area for assessability, uniformity and predictability." *Id.* at 263. The court also pointed out that

---

[2] Defendants state: "Liability in this case can be evaluated under federal admiralty comparative negligence principles, and therefore, at this stage, there appears to be no reason to determine which law applies to the liability aspect of Plaintiff's claim." (Doc. 77 at 9, n.5.) Plaintiffs assert: "This case must be decided by reference to general federal maritime law applicable to personal injury cases." (Doc. 85 at 2.)

3

no "objective yardstick" existed for "translating non-pecuniary losses, such as pain and suffering . . . into monetary terms," noted that the area was "open to widely extravagant claims," and cited awards in the United States that had "soared to dramatically high levels in recent years." *Id.* at 261. The court concluded that, "[i]t is customary to set only one figure for all non-pecuniary loss, including such factors as pain and suffering, loss of amenities and loss of expectation of life." *Id.* at 264. It set $100,000 as "an upper limit of non-pecuniary loss," unless there were "exceptional circumstances." *Id.* at 265. This cap on pain and suffering damages has become well-established in Canadian law as a result of *Andrews* and its progeny. *See Padfield v. Martin* (2003), 227 D.L.R. 4th 670, at ¶ 7 (Can. Ont. C.A.) (commenting that *Andrews* and two other cases comprising the 1978 "*Andrews* trilogy"—*Thornton v. Prince George Sch. Dist. No. 57*, [1978] 2 S.C.R. 267 (Can.) and *Arnold v. Teno*, [1978] 2 S.C.R. 287 (Can.)—established a nationwide cap on general non-pecuniary damages). Circumstances in which the cap "should be exceeded will be rare indeed." *Lindal v. Lindal*, [1981] 2 S.C.R. 629, at ¶ 31 (Can.). Pursuant to the choice of law factors for maritime torts, set out in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), Defendants conclude that the Canadian cap on damages[3] applies to this case.

      Plaintiff counters that his remedies are governed by federal maritime law applicable to personal injury cases. According to Plaintiff, under that body of law, an individual injured by another's tortious conduct is entitled to damages commensurate with the nature and extent of his or her injuries, including pain and suffering. Since there is no cap on general damages in federal maritime law, Plaintiff asserts that this court is without authority to impose one. Plaintiff adds that a choice of law analysis is unnecessary but, if one is conducted, Vermont has the most significant contacts to the case and, because Vermont is located in the United States, "the general maritime law of the United States would apply." (Doc. 85 at 6.)

---

[3] Defendants assert that the "current Canadian cap on pain and suffering damages, adjusted for inflation, is $327,952." (Doc. 77-1 ¶ 10.)

### C. *Lauritzen's* Choice of Law Analysis.

The court concludes that a choice of law analysis is appropriate as more than one jurisdiction's laws potentially govern the amount of pain and suffering damages in this case as federal maritime law does not impose a cap, while Canadian law does. *See Miller v. Bombardier, Inc.*, 872 F. Supp. 114, 114 (S.D.N.Y. 1995) ("[T]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the law of the jurisdictions involved."). In *Lauritzen*, the Supreme Court opined that certain choice of law factors "alone or in combination, are generally conceded to influence choice of law to govern a tort claim, particularly a maritime tort claim . . . ." 345 U.S. at 583. These factors are:

> (1) place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured [party]; (4) allegiance of the defendant shipowner; (5) the place where the contract . . . was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum.

*Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 308 (1970) (citing *Lauritzen*, 345 U.S. 571). In *Rhoditis*, the Supreme Court added an eighth factor to the list: the "shipowner's base of operations." *Id.* at 309.

"The weight to be given each factor varies from case to case and the list is not an exhaustive one." *Carbotrade S.p.A. v. Bureau Veritas*, 99 F.3d 86, 90 (2d Cir. 1996) (citing *Rhoditis*, 398 U.S. at 308-09). Courts thus generally weigh the factors in the context of the totality of the circumstances. *See Rivera v. Offshore Crews, Inc.*, 595 F. Supp. 628, 630 (E.D. La. 1984). Moreover, "the 'significance of one or more factors must be considered in light of the national interest served' by the underlying legal justification for the assertion of jurisdiction." *Reino de España v. Am. Bureau of Shipping, Inc.*, 2010 WL 3118693, at *3 (S.D.N.Y. Aug. 6, 2010) (quoting *Rhoditis*, 398 U.S. at 306, 308-09).

Application of the *Lauritzen* factors to the instant case reveals competing considerations. For example, the first *Lauritzen* factor, the place of the wrongful act,

favors the application of Vermont law.[4] Although in traditional international shipping contexts, the place of the wrongful act "is accorded little importance in the choice of law inquiry" because as vessels ply the waters of many different nations, "the local law might therefore change frequently," *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 191 (3d Cir. 1995), the factor is given more weight in non-traditional contexts. Here, the court must decide which law governs certain injuries arising out of a pleasure craft accident in U.S. territorial waters, where one could predict "at the outset that any injuries will likely occur, nonfortuitously, in the locale where the vessel is stationed." *Id.* Thus, this factor points to application of United States federal maritime law.

The law of the flag[5] does not apply because there is no evidence that the jet-skis were flying a national flag. Similarly, the place of contract is not applicable at all because "no direct contractual relationship exists between the plaintiff and the defendant[s]." *Carbotrade S.p.A.*, 99 F.3d at 91.

Three other *Lauritzen* factors point to the application of Canadian law. The domicile of the injured party is Canada; the owner of the vessel is a Canadian corporation; and the "shipowner's base of operations" is Canada. The Supreme Court has noted that the domicile of the injured party plays a significant role in the analysis since "each nation has a legitimate interest that its nationals . . . be not maimed or disabled from self-support." *Lauritzen*, 345 U.S. at 586; *see Yang v. M/V Minas Leo*, 1994 WL 36921, at *2 (N.D. Cal. Jan. 25, 1994) (observing that although plaintiff was a Korean

---

[4] At one time, the place of the wrongful act factor was very important in maritime torts, as courts followed a *lex loci delicti* rule when choice of law was at issue. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining *lex loci delicti* as "[t]he law of the place where the tort or other wrong was committed."). *Lauritzen* abandoned a strict *lex loci delicti* approach in favor of a multi-factored test. 345 U.S. at 583.

[5] BLACK'S LAW DICTIONARY (8th ed. 2004) defines law of the flag as "[t]he law of the nation whose flag is flown by a particular vessel where it is registered." As a "venerable and uni[v]ersal rule" of maritime law, each nation "may determine for itself the conditions on which it will grant its nationality to a merchant ship, thereby accepting responsibility for it and acquiring authority over it." *Lauritzen*, 345 U.S. at 584.

national seeking permanent residency in United States, that fact did not "diminish the interest of Korea in seeing its own laws applied to its citizens.").

The "inaccessibility of a foreign forum" focuses on the time and resources that plaintiffs, who live in one jurisdiction, would have to expend in traveling to another jurisdiction. While recognizing this as a factor, the *Lauritzen* court, itself, was not persuaded that the money and time that the plaintiff would have to expend in traveling to another jurisdiction (Denmark) should weigh in favor of application of United States law. As the Court observed: "This might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy; but it is not persuasive as to the law by which it shall be judged." *Lauritzen*, 345 U.S. at 580-90. Following suit, the Second Circuit has opined that the "inaccessibility of a foreign forum" is generally irrelevant in a *Lauritzen* analysis, as it "is more pertinent to a forum non conveniens test than to a choice of law test . . ." *Carbotrade S.p.A.*, 99 F.3d at 91. As Canadian citizens, a Canadian forum would certainly not be physically inaccessible to Plaintiff or Defendants.

Finally, Plaintiff chose to bring his lawsuit in the United States, and thus the "law of the forum" factor points to the application of federal maritime law, albeit weakly, because *Lauritzen* has accorded this factor limited relevance. *See Lauritzen*, 345 U.S. at 591 (stating that "there would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable."); *see also Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.*, 426 F.3d 580, 587 (2d Cir. 2005) ("[T]he seventh *Lauritzen* factor—the law of the forum—is irrelevant here because this litigation is in the courts of the United States.") (quoting *Carbotrade*, 99 F.3d at 91); *Neely*, 63 F.3d at 190 ("[T]he law of the forum. . . was considered by the Supreme Court in *Lauritzen* to be a very weak consideration in favor of application of American law[.]") (citing *Lauritzen*, 345 U.S. at 591). The strength of this factor is further diminished in this case because "[s]tate and federal courts in Vermont are as accustomed to ascertaining and applying Canadian law in the appropriate case, as the courts of Quebec are to United

States law." *Desjardin v. Bombardier Recreational Prods., Inc.*, 2009 WL 1181308, at *3 (D. Vt. Apr. 29, 2009) (citations omitted).

Examining the *Lauritzen* factors in the context of the totality of the circumstances, the court is persuaded that Canadian law should apply to Plaintiff's damages claims. The only factors that point to federal maritime law are the place of the injury and the law of the forum, and the Supreme Court has essentially discounted the latter factor.[6]

In contrast, the injured party is a Canadian citizen; the jet-skis are owned by a Canadian corporation; and the "shipowner's base of operations" is Canada. The court also considers the public policy issues at stake in a choice of law analysis. In that regard, the district court's analysis of this issue in *Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129 (N.D. Tex. 1980), is instructive.

In *Baird*, the Northern District of Texas applied the *Andrews* cap to a Canadian citizen's pain and suffering damages arising out a helicopter crash in Surinam. The court summarized how Canadian courts "have taken quite a different theoretical approach to damages for pain and suffering," and have "adopted an analytical framework which theoretically prohibits large damage awards." *Id.* at 1150. The court went on to say that while it was understandable that Texas may have wanted its own "injured citizens to be able to recover a fair and reasonable amount directly related to the facts of particular cases unencumbered by any judicially imposed ceilings," *id.* at 1151, where the plaintiff and third-party defendants were Canadian citizens, "none of the interests implicitly furthered" by Texas law's approach to damages would apply. *Id.* The court opined that where the plaintiff was Canadian, Canada had an interest in seeing its law applied, and

---

[6] At oral argument, Plaintiff pointed out that he and Defendants were visiting New York prior to the accident, and he was treated in Vermont after the accident, which he argues favors the application of federal maritime law to his damages. None of the cases involving maritime torts consider those facts relevant in the *Lauritzen* choice of law analysis. Rather, courts consider convenience of the witnesses as a factor in a forum non conveniens analysis, where courts may decline jurisdiction "when doing so would best serve the convenience of the parties and the ends of justice." *Gross v. British Broad. Corp.*, 386 F.3d 224, 229 (2d Cir. 2004) (internal quotation marks and citation omitted).

where the third-party defendants were Canadian, the "Canadian policy of protection for its defendants is also directly involved in this case. Both of these policies would be circumvented if [United States] law was applied." *Id.* That same rationale applies here. Plaintiff and Defendants are Canadian citizens, and Canada has an interest in seeing its policy limiting pain and suffering damages apply to personal injury accidents involving its citizens. Neither the United States, nor Vermont has a similar interest in this case.

Applying Canadian law also comports with issues of international comity underpinning the *Lauritzen* analysis, as this court would thereby respect the public policy choices made by Canadian courts in cases involving their citizens. *See Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 383 (1959) ("The controlling considerations are the interacting interests of the United States and of foreign countries, and in assessing them we must move with the circumspection appropriate when this Court is adjudicating issues inevitably entangled in the conduct of our international relations."), *superseded by statute*, 45 U.S.C. § 59, *on other grounds*; *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1173 (11th Cir. 2009) ("Concerns for comity, however, make the *Lauritzen* analysis better equipped at handling choice of law issues where the law of another nation is involved."); *Neely*, 63 F.3d at 181 (stating that one of the purposes of the *Lauritzen* analysis "is to resolve and avoid conflicts with the maritime laws of other nations.").

In sum, other than the fact that the case is pending in U.S. District Court in the District of Vermont and the accident occurred in United States territorial waters, which notably border Canada, the case has no other significant contacts with the United States. Pursuant to the *Lauritzen* analysis, the court will thus apply Canadian law to the pain and suffering remedies sought by the Plaintiff.

### D. The Depecage Doctrine.

The doctrine of depecage further supports the application of the Canadian cap on pain and suffering damages.[7] Depecage permits a court to apply different bodies of law

---

[7] Plaintiff does not argue against application of the depecage doctrine. He simply contends that "[t]here is no legal basis for the application of Canadian tort law." (Doc. 85 at 1.)

9

to two or more issues in a single case. Federal courts have invoked the doctrine for decades:

> Conflict-of-law issues should be decided under an issue-specific approach, called depecage, which "recognizes that in a single action different states may have different degrees of interests with respect to different operative facts and elements of a claim or defense." *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000). "Depecage occurs where the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate the other issues. The technique permits a more nuanced handling of certain multistate situations and thus forwards the policy of aptness."

*In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001*, 2006 WL 1288298, at *23 (S.D.N.Y. May 9, 2006) (quoting Arthur Taylor von Mehren, *Special Substantive Rules for Multistate Problems: Their Role and Significance in Contemporary Choice of Law Methodology*, 88 HARV. L. REV. 347 (1974)). As the Eighth Circuit observed:

> Amid the chaos and tumult of choice of law, there is at least one point on which there seems to be general agreement in the United States. This is that choice of applicable law should frequently depend upon the issue involved. The search in these instances is not for the state whose law will be applied to govern all issues in a case; rather it is for the rule of law that can most appropriately be applied to govern the particular issue. As a result situations do arise where the court must decide whether it should apply the rules of different states to determine different issues in a single case. This process of applying the rules of different states to determine different issues has the forbidding name of depecage.

*Ewing v. St. Louis-Clayton Orthopedic Group, Inc.*, 790 F.2d 682, 686 (8th Cir. 1986) (quoting W. Reese, *Depecage: A Common Phenomenon in Choice of Law*, 73 COLUM. L. REV. 58, 58 (1973)). In particular, courts have used depecage to decide liability and damages issues according to the laws of different jurisdictions. *See Barrett v. Ambient Pressure Diving, Ltd.*, 2008 WL 4934021, at *2 (D.N.H. Nov. 17, 2008) ("While it might seem strange to apply the law of one jurisdiction to resolve liability issues, and the law of another to resolve damages claims (called 'depecage'), the application of different states' laws to different issues is not uncommon.") (citations omitted).

The Second Circuit has approved of the doctrine of depecage. *See, e.g., Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 & n.4 (2d Cir. 2008). Courts have also applied depecage in admiralty cases. For example, in *Cooper*, the Eleventh Circuit explained:

> It may seem anomalous that federal maritime law may have governed [plaintiff's] personal injury action while Dutch law governs certain third-party claims that are based on that action, but such an outcome is explicitly recognized by the conflict of laws doctrine of *depecage*. *See Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir. 1985) ("Pursuant to the conflicts doctrine of 'depecage,' different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ.").

*Cooper*, 575 F.3d at 1173 n.13; *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 216 F.3d 338, 345 n.12 (3d Cir. 2000) (applying depecage in admiralty case to hold that one state's law governed plaintiff's claim for compensatory damages and another state's law governed plaintiff's claim for punitive damages); *Air Crash at Belle Harbor*, 2006 WL 1288298, at *23 (applying United States admiralty law to compensatory damages issues and French law to punitive damages issues); *Frohmader v. Sea Ray (In re Skipperliner Indus., Inc.)*, 2002 WL 32348827, at *14 (W.D. Wis. Jan. 31, 2002) ("Under general maritime law, the substantive law used to determine remedies can be different from the substantive law that determines liability.").

The United States has an interest in the adjudication of liability in this case, as the accident took place in its territorial waters, the safety of which the United States has an interest in regulating. However, with regard to the issue of damages, the United States has virtually no interest while those of Canada are compelling. Accordingly, "[t]he appropriate question is not whether [Canada's] specific interest in the application of its law on [pain and suffering] damages is dominant, as compared to [United States law], but rather, whether the [country] in which the injury occurred has a dominant interest in the application of its law on [pain and suffering] damages as compared to the [country] of the plaintiff's domicile." *Calhoun*, 216 F.3d at 348 n.15. Since the Canadian and United

States law on pain and suffering damages conflict and since the *Lauritzen* analysis points to application of Canadian remedies law, the doctrine of depecage permits this court to apply Canadian substantive law to pain and suffering damages and federal maritime law to liability.

### III. Conclusion.

For the reasons set forth above, the court hereby GRANTS Defendants' motion for partial summary judgment. If Plaintiff is successful in establishing liability, whether the court will apply the *Andrews* cap to Plaintiff's pain and suffering damages, if any, depends on two points. First, Defendants will have to demonstrate that the *Andrews* cap is applicable to Plaintiff's requests for monetary damages. Second, should the *Andrews* cap apply, the parties must submit competent evidence that the cap for pain and suffering damages in Canada is currently $327,952 (in Canadian dollars), or some other sum certain.

The court hereby DENIES WITHOUT PREJUDICE Defendants' alternative motion in limine. Here, there is scant likelihood that the court will be prejudiced by hearing Plaintiff's full presentation of evidence regarding his alleged pain and suffering damages even if a cap on those damages is later applied. Such a presentation may be necessary in any determination of whether this is an extraordinary case to which the *Andrews* cap should not be applied. It may also preserve the evidentiary record in the event the court's imposition of the Canadian cap is reversed on appeal. The court invites the parties to revisit this issue at trial.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of October, 2010.

Christina Reiss
United States District Court Judge